MILLER *vs.* ADSIT.

*Replevin* may be maintained by a *receiptor* of goods, where he is bound to de-
liver them by a specific day, or pay the amount of the execution under
which the levy was made, although the property be left by him in the pos-
session of the defendant in the execution.*

ERROR from the supreme court. *Miller* brought an ac-
tion of *replevin* against *Adsit* in the Rensselaer common
pleas in September, 1828, and declared for the taking and
detention of two horses. The defendant pleaded, 1. *Non-
cepit;* 2. That the *property* in the horses was in one *Jacob
Coon*, traversing the property to be in the plaintiff; and 3.
That the property in the horses was in *Jacob Coon*, and
that they were levied upon, on the 2d June, 1828, by the
defendant as a constable by virtue of an execution issued
on a justice's judgment rendered on the 16th May, 1828,
in favor of one E. R. Ball against Jacob Coon for fifty-one
dollars and seventeen cents. To the *first* plea the plaintiff
put in a similiter; to the *second* he replied denying the *pro-
perty* in the horses to be in Coon, and re-asserting property
in himself; and to the *third* plea put in two replications;
1. A similar replication to the last, and 2. That on the 9th
May, 1828, one Eliza Coon recovered a judgment in a jus-
tice's court by confession against Jacob Coon for two hun-

---

* The property in question, a pair of horses, was levied upon by virtue of
a justice's execution, and a third person became *receiptor,* and left the horses
with the defendant in the execution, to pasture. Subsequently, they were
levied upon by another officer by virtue of a second justice's execution, and
taken away. The receiptor brought *replevin* against the second officer in a
court of common pleas, and was *nonsuited;* which nonsuit was confirmed, in
error in the supreme court, who held that the *receiptor* stood in the relation
of *surety* to the defendant in the execution, and as such was not entitled to
sustain the action. The judgment of the supreme court was *reversed* in the
*court for the correction of errors.* The CHANCELLOR dissented, holding that
the plaintiff, in this case, not having the *actual possession,* could not main-
tain *replevin;* but conceding that a *receiptor* has *an interest in the property,*
and may maintain *trespass* against a wrong-doer who takes it from his actual
possession, or *case* against any one who does an injury to the property.

dred and *one* dollars and twelve cents, upon which an exe-
cution was issued and delivered to one *Solyman Coon*, a
constable, who, on the same *ninth* day of *May*, levied upon
the horses in question, and advertised the same to be sold
at public vendue on the *twelfth* day of June then next;
that the plaintiff in this suit became the *receiptor* of the said
property, and agreed to deliver the same to the constable,
Solyman Coon, on the twelfth day of June, or whenever
the same should be demanded, and then and there took the
horses into his custody and possession, and retained the
same in his possession until the *tenth* day of *June*, when
they were seized and taken away by the defendant. To
the first replication to the third plea the defendant put in a
similiter, and to the second replication to the same plea *re-
joined* that he *did not seize and take the horses from the pos-
session of the plaintiff*, concluding to the country. On the
trial in the common pleas the existence of the judgments
and executions as set forth in the pleadings was admitted,
and it was also admitted that on the *thirteenth* day of *May*,
Solyman Coon levied upon the horses in question by virtue
of the execution in favor of *Eliza Coon*, and took from the
plaintiff in this cause an instrument in writing whereby the
plaintiff acknowledged to have received the horses from
Solyman Coon, and agreed to *re-deliver* them to him on the
*twenty-eighth* day of June, or pay the debts and costs de-
mandable under the execution in favor of Eliza Coon. It
was proved by the testimony of *Jacob Coon*, that the plain-
tiff in this cause, Miller, after having receipted the property,
requested him to take the horses and keep them, using them
enough to pay for their pasturage, as he, the plaintiff, had
no pasture for them; and that the plaintiff had the right to
take them from him whenever he pleased. That he ac-
cordingly took the horses, and they were in his employment
when they were taken by the defendant on the *third* day of
June. At the time of the taking, the plaintiff was not pre-
sent; he resided on an adjoining farm; and the defendant
was *informed* of the *previous levy*, and of the circumstances
under which the property was situated. The defendant
moved for a *nonsuit* on the ground that the plaintiff being a

*bare receiptor* of the property in question, had not such an interest in it as would enable him to maintain the action of *replevin*. The common pleas granted the nonsuit, and the defendant electing to take judgment for the value of the property replevied, the court directed the jury to assess such value. The value of the horses was proved to be one hundred dollars, and the interest of that sum, since the taking, to be eighteen dollars and sixty-six cents. The plaintiff insisted that the defendant, if entitled to recover, was only entitled to the amount of the execution in his hands, viz. fifty-one dollars and seventeen cents, and such damages in addition for the detention, as the jury should think proper to allow ; which proposition was overruled by the court, and the jury, under its direction, assessed the value of the property at one hundred and eighteen dollars and sixty-six cents, for which sum and the costs of suit the defendant took judgment. The *plaintiff* sued out a writ of error, removing the record into the *supreme court*, where the following judgment was rendered : the judgment of the common pleas to be *reversed*, and a *venire de novo* to issue in the cause, the costs to abide the event thereof, unless the defendant before the next term of the common pleas *remit* to the plaintiff so much of the amount found by the jury as to reduce the same to the sum of fifty-one dollars and seventeen cents with the interest of that sum and the constable's fees on the execution in favor of Ball ; and in case he so remit, then that the judgment be *affirmed* without costs. The defendant entered a *remittitur* accordingly, and took judgment for the balance. Whereupon the plaintiff removed the record into this court by writ of error.

The following opinion was delivered in the supreme court by *Chief Justice* Nelson previous to his promotion :

" It was settled in *Dillenback* v. *Jerome,* 7 Cowen, 294, that a receiptor to an officer for property levied upon by execution, so that it might be forthcoming at the sale, not in his actual possession, could not maintain trover for a wrongful conversion of the same. Under such circumstances he is viewed in the light of a surety for the owner

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

or the defendant in execution, to the officer. Some of the cases speak of him as a servant to the officer, 14 Mass. R. 217, which with great respect I think of questionable accuracy, and rather arbitrary, as there is very little, if any analogy in the case to such a relation between the parties. When the property is left in the possession of the owner or defendant in execution, and a receipt given or agreement made by a third person, that it shall be delivered on demand, or on a fixed day, such third person is in strict language a surety for the defendant. If the property is taken out of the possession of the defendant by virtue of the execution, as the officer may do, and is left for safe keeping in possession of a third person for hire or otherwise, he is then a bailee of such property to the officer and his rights and liabilities determinable in that character. It is clear, that the officer is not bound upon the levy to take the property into his actual custody or possession, and that he may leave it with the defendant, or any other person upon such terms as he chooses to make, being himself responsible to the plaintiff for its application upon the execution. If it consists of live stock, he may hire an agister to keep it—if merchandize, a warehouseman—if unfinished manufactured articles, he may contract with a manufacturer to finish them, and these various persons will hold the same relation to him, which they would in their different occupations to any other customer. And if so, there cannot be a doubt that if an injury is done to the property by a wrong doer while thus in their possession, upon well settled and familiar principles, they could maintain an action upon the strength of their special property. These remarks are not essential to the decision of this case, and I make them only as containing my individual views of the question, which are somewhat at variance with some of the reasoning and positions in the above cases. I cannot, however, distinguish this case from that of *Dillenback* v. *Jerome*, and the plaintiff must be viewed in the light of a mere surety to the officer for the defendant in the execution, and he was, therefore, properly nonsuited.

"It is said that the defendant ought to have demurred to the replication as the title of the plaintiff was there set out,

and he should not have been nonsuited on the trial. The answer is, that in my opinion the title as set out in the replication was sufficient to sustain the action, as it appears the property was delivered by the constable to the plaintiff, who agreed to keep it safe, and re-deliver it to him at a future day, and that while it was thus in his actual custody and possession, it was wrongfully taken by the defendant. The facts on the trial did not come up to the replication. The property was not delivered to the receiptor in fact, but left with the defendant in the execution.

" As to the damages. The defendant might, no doubt, have taken judgment of the *retorno habendo,* and re-possessed himself of the property on the execution. In that case he must have sold it on his execution, and all beyond paying the debt and costs must have been returned to the defendant in the execution, or paid over to the other officer. But he has chosen to have the damages assessed in preference to the remedy on the common law judgment of *retorno habendo,* and the question is, what shall be the measure of them? It is clear, if the constable, holding the other execution, had brought the replevin, the measure of damages against him would have been the amount of the execution (and costs) in the hands of the defendant here, because at most it would only have a preference, and any thing beyond that amount would belong to the other officer. I consider the present plaintiff in as good a situation as the constable, so far as the amount of the recovery is concerned. He stands as the receiptor or surety to him, of the property, and as such is responsible for it. It would, therefore, be idle to draw the money out of his hands for the sake of paying it over to the officer. The latter is pre-sumed to be satisfied with the receiptor, or he would not have taken him. At all events, I see no objection to leave that matter to be arranged between them without the aid or interference of the defendant here. If he gets the money on his execution, it is all that concerns him. The receiptor, having the possessory control of the property both by the consent of the first officer and the defendant in the execution

ALBANY,
Dec. 1836.

Miller
v.
Adsit

affords to the defendant here abundant indemnity that he cannot be called on for the value of the horses over and above his execution. The error of the court below on this point was in viewing the plaintiff as a stranger to the property. 7 Cowen, 670, and note, and p. 681. Though he cannot technically maintain *replevin*, yet his responsibility for the property to third persons is such as should be available to him in mitigating the recovery in the case, the same as if he was owner, or stood in his place. The 2 R. S. 531, sec. 55, contains nothing when properly understood in conflict with this view. It should be construed to apply literally only to cases where the defendant shows a right or title to the whole of the property replevied, and consequently to its value.

"Judgment reversed *venire de novo*, unless the defendant take judgment for fifty-one dollars and seventeen cents and interest from the 16th May, 1828, and costs of constable on execution—then affirmed without costs."

The cause was argued in this court by

*J. N. Cushman*, for the plaintiff in error.

*S. Stevens*, for the defendant in error.

### Points for the plaintiff in error.

I. The plaintiff was improperly nonsuited, because, *first*, The cause came regularly before the court for the trial of an *issue of fact*, and all the evidence upon that issue should have been heard before *any* motion for a nonsuit could be entertained. 1 Paine & Duer, 539–40. 1 Ch. Pl. 194. *Safford* v. *Stevens*, 2 Wendell, 164. *Second*. The nonsuit was granted, not for the insufficiency of the proof, but because the plaintiff's title, as set forth in the record, was defective. *Sargeant* v. ———, 5 Cowen, 114–15. *Smith* v. *Elder*, 3 Johns. R. 113. 3 Stark Ev. 139–40. *Cameron* v. *Reynolds*, Cowp. 407. *Myer* v. *McLean*, 1 Johns. R. 509. *Van Vechten* v. *Graves*, 4 Johns. R. 406.

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

II. The plaintiff, as receiptor of the property to the sheriff, may maintain *replevin* for the wrongful taking. *First.* According to the tenor of the receipt he was entitled to the possession of the property at the time of the taking by the defendant. *Second.* The actual possession or what is equivalent, the immediate right of possession was in the plaintiff: because, 1. Jacob Coon, the defendant in the execution, was incapable of holding even a possessory interest; the property being as to him in the custody of the law, and his title was in abeyance. *The People* v. *Palmer*, 10 Wendell, 165. 1 Ch. Pl. 159. *Dunham* v. *Wyckoff*, 3 Wendell, 281. *Perley* v. *Foster*, 9 Mass. R. 114. *Bond* v. *Padelford*, 13 id. 394. 2. The constable could not bring an action, as he had only a special property without the right of immediate possession. Hammond on Par. to Ac. p. 78, sec. 4. *Gordon* v. *Harper*, 7 T. R. 11, 12, 13, 14. Story's com. tit. Bail, 95, § 125. 3. Eliza Coon, the plaintiff in the execution, could not sue, for as yet she had not even a qualified or contingent interest in the property, and had neither the possession nor the right of possession. *Ladd* v. *North*, 2 Mass. R. 516. *Taylor* v. *Manderson*, Ash. 130. *Third.* Such a title or possession, as will maintain trespass, is also sufficient in *replevin*. *Clark* v. *Skinner*, 20 Johns. R. 468. *Chapman* v. *Andrews*, 3 Wendell, 242. *Thompson* v. *Button*, 14 Johns. R. 84. *Pangborn* v. *Patridge*, 7 id. 144. *Bruin* v. *Ogden*, 6 Halst. 378. *Marshall* v. *Davis*, 1 Wendell, 109. *Fourth.* Possession alone is sufficient in trespass as against any one but the rightful owner. *Ward* v. *Macouly*, 4 T. R. 489. Hammond on Par. to Ac. 37, § 2. Fonb. Nat. Br. 101, F. *Fifth.* A naked trustee, without interest, may maintain an action for the tortious disturbance of his possession. *Newsum* v. *Newsum*, 1 Leigh's R. 86. Ham. Par. to Ac. 37, § 2. *Rooth* v. *Wilson*, 1. B. & A. 59. ———— 2 Saund. 47, b. *Sixth.* A bailee or depositary, who is answerable to his bailor or depositor, may maintain an action for the property. *Hotchkiss* v. *McViccar*, 12 Johns. R. 403. Ham. Par. to Ac. 39, §. 4; 180, § 2. 1 Ch. Pl. 151, 153. Jones on Bail. 91, n. 2. 2 Black.

Comm. 395–6.   Story's Com.  Bail, 73, § 93.  *Harrison* v. *McIntosh*, 1 Johns. R. 384.   7 Coke's Rep. 13. p. 69.  *Seventh.*   A receiptor to an officer is answerable on his receipt. *Brown* v *Cook*, 9 Johns. R. 361.   *Lockwood* v. *Ball*, 1 Cowen, 333.   *Phillips* v. *Hall*, 8 Wendell, 614. 15.   *Waterman* v. *Robinson*, 5 Mass. R. 303.   *Whittier* v. *Smith*, 11 id. 211.   *Spencer* v. *Williams*, 2 Vermont R. 259. Rolle's Ab. tit Tr. 6. 7, p. 569.   *Dillenback* v. *Jerome*, 7 Cowen, 298.   *Eighth.*  The plaintiff was not a naked bailee—he had entered into a special undertaking, which he was legally liable to perform.   The bailment was a *commodatum*, or " loan for use  to be re-delivered specifically," and the plaintiff would have been liable for loss or injury occasioned by an accident which could have been avoided by a very careful and vigilant man.   Noy's maxims, 91, Bytherwood's ed. p. 211.   When the contract or condition upon which the property was bailed is performed, and not before, the bailee is obliged to return it.  *Riches* v. *Bridges*, Yelv. 4, Cro. Eliz. 883.   *Pickas* v. *Guile*, Yelv. 128. *Ninth.* While the receiptor is entitled to possession, he may maintain either trespass, *replevin* or trover.  *Burrows* v. *Stoddard*, 3 Conn. R. 160.   *Harris* v. *Smith*, 3 S. & R. 20.  *Shannon* v. *Shannon*, 1 Sch. & L. 325.   *Poole* v. *Symonds*, 1 New Hamp. R. 289.   *Tenth.* Although the constable might be entitled to an action for disturbing the property while in the possession of the receiptor, yet the receiptor may also be entitled to an action for the same cause.   Their rights are not incompatible, but a right of action may exist in each at the same time.   Ham. Par to Ac. 180–1.   16 East, 33.

*Points for the defendant in error.*

I. The plaintiff in error being a mere receiptor of the property to an officer who had levied upon it, and not having the actual possession of it, cannot maintain *replevin*.   He had neither possession of, nor property in, the chattels in question.   1. Possession alone is not sufficient.  *Templane* v. *Case*, 10 Mod. R.  25.   *Waterman* v. *Robinson*, 5 Mass. R.  304.   *Perley* v. *Foster*, 9 id. 110.   1 Chitty's Plead. edition of 1833, p. 187.   3 Starkie's Ev. 1295.   3

Chitty's Plead. 187. *Harrison* v. *McIntosh*, 1 Johns. R. 134. *Wildman* v. *North*, 2 Levinz, 92. *Butcher* v. *Porter*, 1 Salk. 94. *Hoyt* v. *Gelston*, 13 Johns. R. 151. *Lambert* v. *Stroother*, Willes' Rep. 221. *Kennedy* v. *Strong*, 14 Johns. R. 131–2. *Rotan* v. *Fletcher*, 12 id. 207. 2. Property *alone*, without possession, is not sufficient to maintain *replevin*. *Shannon* v. *Shannon*, 1 Sch. & Lef. 326. *Meany* v. *Head*, 1 Mason's R. 322–3. *Chapman* v. *Andrews*, 3 Wendell, 224. These cases show that a plaintiff must have the actual or constructive possession, *and also* property, general or special, to maintain *replevin*. 3. But a receiptor of property to an officer, is merely the servant of the officer, and has no property in the thing receipted, which will enable him to maintain *replevin*. *Waterman* v. *Robinson*, 5 Mass. R. 303. *Ludden* v. *Leavitt*, 9 id. 104. *Perley* v. *Foster*, 9 id. 112. *Warren* v. *Leland*, 9 id. 265. *Commonwealth* v. *Moore*, 14 id. 217. *Norton* v. *The People*, 8 Cowen, 137. *Dillenback* v. *Jerome*, 7 id. 294. *Mitchell* v. *Hinman*, 8 Wendell, 667. *Phillips* v. *Hall*, 8 id. 614. *Collins* v. *Butts*, 10 id. 410. After a levy, the goods are in the custody of the law. *Hartwell et al.* v. *Bissel*, 17 Johns. R. 128. *Hall* v. *Tuttle*, 2 Wendell, 478. Although the goods are delivered to the receiptor, still the officer has the special property in them, and is entitled to immediate possession—to take them from the receiptor whenever he thinks proper. *Bond* v. *Padelford*, 13 Mass. 394. *Brownell* v. *Manchester*, 1 Pick. 232. *Baker & Knapp* v. *Miller*, 6 Johns. R. 196. The possession of the agent or servant is, both in fact and in law, the actual possession of the principal. *Clark* v. *Skinner*, 6 Johns. R. 465. *Brownell* v. *Manchester*, 1 Pick. 234. If the relation of receiptor and officer constitute the former the bailee of the latter, he is a mere naked voluntary bailee, without compensation, and only liable for gross neglect. *Hartop* v. *Hoar*, 3 Atk. 44. *Foster* v. *The Essex Bank*, 17 Mass. R. 498–9, 500. *Edson* v. *Wetson*, 7 Cowen, 278. *Finucane* v. *Small*, 1 Esp. R. 315.

II. The plaintiff in error was properly nonsuited. 1. Because the evidence did not sustain the action, on the plea

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

of *non cepit.*   2. Because the evidence on the part of the plaintiff, sustained the defendant's plea of property in Jacob Coon.   1 Chitty's Plead. 627.   Willes' Rep. 225.   *Harrison* v. *McIntosh*, 1 Johns. R. 382, 3, 4, 5.   3. Because it failed to maintain on the part of the plaintiff, the only issue joined on his last plea in bar, to wit, "that the property was not taken from his possession."

The following opinions were delivered:

By the CHANCELLOR.   In this case, the plaintiff brought an action of *replevin* for a span of horses which belonged to Jacob Coon, and which were taken by the defendant from the actual possession of Coon on an execution against him.   The general question, whether the *receiptor* of goods, taken in execution, has such a special property in the goods as will enable him to maintain an action of *replevin*, or any other action in his own name, against a mere wrong doer, who takes the goods out of his actual possession, was the one principally discussed upon the argument.   I have no doubt whatever as to the right of the receiptor to bring an action of *tresspass* in such a case in his own name, in which he may recover whatever damages he will be liable for to the officer to whom the receipt is given.   Any possession, even without right, is sufficient to maintain an action of *trespass* against a mere stranger who, without any pretence of claim from or under the real owner, violates such possession; but the law appears to be settled, that to maintain *replevin*, the plaintiff must not only have the *possession,* but he must also have either a *general* or *special property* in the goods replevied.   Hence, it has always been held that a plea of property in a stranger was a good plea, either in abatement or in bar, *in an action of replevin.* It was so decided by the supreme court of this state in the case of *Harrison* v. *McIntosh*, 1 Johns. R. 384, and such has been the established rule of law upon the subject for more than a century.   See Bacon's case, Cro. Eliz. 475; *Presgrave* v. *Sanders*, 1 Salk. Rep. 5;   Com. Dig. tit. Pleader, 3 K. 11, 12.   Either a general or a special property in the goods is therefore necessary to entitle the party

from whom they are taken to maintain *replevin*, although the bare possession is sufficient to maintain *trespass* for a violation of such possession. Judges have sometimes said that replevin will lie in all cases where an action of trespass could be brought for taking the goods. Those expressions, however, will upon examination be found to relate to the *manner of taking* which is necessary to sustain the action, and not to the ownership, which is required in the one case but not in the other. Previous to the revised statutes, therefore, the possession and tortious taking of the property, must have been such that an action of trespass could have been maintained against the defendant; and in addition to that, the plaintiff must also have had such a general or special property in the goods as would have entitled him to recover in *trover* for a conversion of such goods by the defendant. Either a general or a special property in the goods, however, is sufficient to maintain an action of replevin against a wrong-doer if the goods are taken from the possession of the plaintiff.

Whether the receiptor of goods taken on execution, or any other bailee or mere depositary of goods, who has no lien thereon or any other interest therein than what arises from his liability to the officer or owner for the safe keeping and return of the goods, has such an interest therein as will entitle him to maintain either *replevin* or *trover* for the taking of the goods from his possession by a mere stranger, claiming no right under the general owner or the officer, is a question which does not appear to be very well settled in this country. The cases cited upon the argument show that different opinions prevail in the states of New Hampshire, Massachusetts, Pennsylvania, and New York on this subject; and the same difference of opinion appears to have existed in England at a former period. The case referred to by Sir William Jones from the year books, 21 Hen. 7. 14 *b.* appears to be one in which an action of *replevin* was sustained by such a bailee, for the taking of the goods out of his possession; but Mr. Justice Story in his learned commentary upon the law of bailments supposes

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

that the case in the year books was either misreported, or that it is overruled by the case of *Hartop* v. *Hoare*, 3 Atk. Rep. 39, and other English cases. He therefore arrives at the conclusion that the doctrine generally maintained by the better authorities is that a depositary has no property whatever in the deposit, but a custody only. Story on Bail, 72, § 93. There certainly does appear to be an objection to permitting a mere receiptor to maintain an action of *replevin* by which he will obtain the actual possession of the property, which may be much more than sufficient to satisfy the execution in the hands of the officer; and at the same time leaving the defendant, who may have taken the property under a subsequent execution, liable to an action of trespass or trover by the first officer, who may also recover against him to the full amount of the first execution. I am inclined to think, however, though that question does not necessarily arise under the pleadings in this cause, that the receiptor who has become answerable to the officer for the absolute return of the goods seized on execution, has such an interest therein as to enable him to protect his possession against a mere wrong-doer, by any of the usual remedies allowed to a possessor of goods having a special property therein, so long as the receiptor actually retains that possession himself. But if he suffers the goods to remain in the hands of the general owner, or re-delivers them to him to be kept, he cannot resort to an action of *replevin*, which requires *possession* as well as *property* to sustain it. I can imagine a case in which two distinct parties may each have a special interest in goods which belong to a third person as the general owner. Where the actual possession, however, is in such general owner, I cannot conceive of a case in which the law would give a constructive possession to two other distinct parties at the same instant, so as to authorize both to bring separate actions of replevin at the same time, for a violation of their several possessions. If the actual possession is in the judgment debtor, the general owner, the constructive possession at the time of taking the goods from him must be either in the receiptor or in the officer, but cannot be separately in each;

and if it is in the receiptor and not in the officer, then a subsequent execution could not reach the property, so as to obtain satisfaction out of the surplus which might remain after satisfying the first execution.

As property seized upon execution is in the custody of the law until it is sold, or the execution is otherwise satisfied, the officer cannot legally do any act which shall have the effect to divest him of the constructive possession thereof and the right to reduce it into his immediate possession, so that if a second execution is put into his hands no new levy is necessary to give the creditor an immediate lien upon the property. In the present case, therefore, as the second execution was levied upon the property in the actual possession of Jacob Coon, the general owner, and the constructive possession was in the officer who had levied upon it by virtue of the first execution, Miller, the receiptor, had not such a possession, coupled with his special interest in the preservation of the property, as to authorize him to bring an action of *replevin*, and thus to defeat the lien of the last execution. If he sustained any injury by the second levy, or was likely to sustain any on account of his liability upon the receipt, he might either have brought an action of replevin in the name of the officer who had the constructive possession, or an action upon the case in his own name. So that in one way or the other, his rights would have been fully protected without defeating the rights of the junior creditor as to the surplus, if any there should be.

To ascertain the precise questions which arise upon this bill of exceptions in relation to the issues to be tried by the jury, it is necessary to look into the pleadings and see what those issues were. The declaration was in the usual form, alleging the taking of a span of horses of the plaintiff; to which declaration the defendant pleaded three several pleas in bar : *first*, non cepit; *secondly*, property in Jacob Coon; and *thirdly*, property in Jacob Coon, with an avowry or justification of the taking of the property under a regular judgment and execution against him in the hands of the defendant as a constable. To the pleas of property in J. Coon, the plaintiff replied that the horses were not the property of Coon,

but were the property of the plaintiff. And to the plea of justification under the execution against Coon, the plaintiff replied that the horses had been previously levied on by a constable under another execution against Coon, and delivered to the plaintiff as receiptor, who retained the possession thereof until the defendant seized and took them from him. To this last replication the defendant *rejoined* by denying and taking issue upon the allegation that the horses were taken by him *from the possession of the plaintiff.* All that was necessary for the plaintiff to prove under the first plea was that the defendant took the property either out of his actual or constructive possession. Under the pleas of property in J. Coon, however, he was further bound to prove that the property of the horses was in himself, and not in Coon as alleged by the defendant. As the general title to the property was in fact in Jacob Coon, I am inclined to think the plaintiff could not reply *generally* that the property was in himself and not in Coon; but that he should have replied specially, setting out his special interest in the property as receiptor under the first execution against Coon; and that he therefore failed on the issue joined upon the plea of property. But as he clearly failed upon the issue of *non cepit*, and upon the issue joined upon the rejoinder to the last replication, in showing that the horses were taken *from his own possession* either actual or constructive, it is not necessary for me to express any definitive opinion upon the question arising under the second plea.

Upon the plea of non cepit, the plaintiff failed; as the property was taken in the possession of Coon, and therefore was not taken from the actual possession of the receiptor; and as the constructive possession was at that time in the officer who held the first execution, and not in the plaintiff, the special interest in the preservation of the property as receiptor, was not sufficient to entitle him to recover upon any constructive possession. He also failed upon the issue joined upon the last replication, for the same reason. Although I cannot agree with the supreme court that the receiptor has no interest in property delivered to

him by an officer for safe keeping which will enable him to bring an action in his own name for any injury he may sustain for a violation of his rights by a wrong doer, I think the plaintiff in the present case was properly nonsuited upon the trial; and that the judgment should therefore be affirmed.

By Senator Maison. In the case of *Collins* v. *Butts*, 13 Wendell, 144, I had occasion to look into the law, which has reference to the rights and liabilities of a *receiptor* of goods levied upon by execution. I came to the conclusion that the receiptor, in that case, was not to be deemed a mere agent or servant or naked bailee, but that he could maintain either *trespass* or *trover* against any person, but the sheriff, who should take the goods from him. The decision of that case, however, did not turn on that point, but upon a question of set-off. It became necessary incidentally to inquire into the rights of the receiptor, in explanation of my views as to his right to make the set-off contended for in that case. The question, therefore, whether a receiptor is to be regarded as a mere servant, agent or bailee, is an open question, not decided in that case, and is now distinctly presented for our consideration in the case at bar.

It has been held in a variety of cases, that a sheriff or constable in virtue of a levy has a special property in the goods or chattels levied upon, and can maintain *trespass*, *trover* or *replevin*, against any person who shall take them, not only from his own possession, but from the possession of the receiptor. *Palmer* v. *The People*, 10 Wendell, 165. *Ladd* v. *North*, 2 Mass. R. 516. *Bond* v. *Padelford*, 13 id. 394. The sheriff has in fact, no property in the chattel levied upon, either general or special; he has no right to sell it at private sale, nor to exercise any of the powers over it, which one, having a property in it, may exercise; his control or power over the chattel is of a peculiar character, perfectly *sui generis*, which the law has given him as an executive officer, in order that the judgment of the court shall be enforced or carried into effect, and that the

ends of justice shall be attained, by satisfying the plaintiff's demand out of the property of the defendant. For this purpose, he is authorized to take the goods and chattels, and carry them away out of the defendant's possession, and convert them into money by a public sale; and, after levy, being responsible for their value, the law, whose agent he is, vests him with a power to maintain actions against those, who unlawfully meddle with them, to his hindrance in the performance of his duties, and to the exposing him to responsibilities to which he should not be subjected, without the power to protect himself. The chief justice, in the case of *Ladd* v. *North*, says, " this right of action is given to the sheriff, because he is acccountable to the judgment creditor for a sum of money equal to the value of the goods, and it would be unjust, if he could not indemnify himself, by the recovery of damages for the wrongful taking." And Mr. Justice Spencer, in *Hotchkiss* v. *McVickar*, 12 Johns. R. 401, said, " If the goods are rescued, the sheriff may return, that they are rescued, and he will not be liable. 1 Vent. 53. 1 Brownlow, 132. This shows that the property did not vest in him; indeed the execution creates the lien for the benefit of the creditor, and the sheriff is the mere minister of the law to procure for the creditor satisfaction of the debt; and to this end, the sheriff is invested with the right, after he has found the property, and levied on it, to hold possession until a sale, and if that possession is violated, he may maintain trespass or trover." So perfect and complete is the sheriff's power over the goods after the levy, that the defendant, the real owner, cannot sell them to any person, so as to transmit a title to the purchaser though the sale be *bona fide*, and the purchaser ignorant of the levy. *Rew* v. *Barber*, 3 Cowen, 272. The general ownership of the property being in abeyance, suspended, during the life of the execution, and waiting to be communicated to the purchaser at the sheriff's sale. The goods are in the custody of the law, and the defendant cannot replevy them nor can the real owner, if they were levied upon while in the defendant's possession, unless the defendant held them as his agent or servant; the possession of the agent or ser-

vant being in judgment of law, the actual possession of the principal or owner. *Thompson* v. *Button*, 14 Johns. R. 84. *Gardner* v. *Campbell*, 15 id. 401. *Hartwell* v. *Bissel*, 17 id. 128. *Clark* v. *Skinner*, 20 id. 465. *Hall* v. *Tuttle*, 2 Wendell, 478. The sheriff sells not his property, but the property right or interest which the defendant in the execution has in the goods, be that right or interest what it may. It is in virtue of his office, as a minister of the law, and the responsibilities which he, as such officer, has incurred or assumed, which authorizes him to sue. If the sheriff levy on the goods of A. which he had pawned or pledged to B. as security for a debt, A. has the general property. B. the special property, and the sheriff the legal property, if I may so term it, which is paramount to both; and this is property enough to answer the requirement of the law, that the plaintiff shall state in his declaration, that the goods or chattels sued for are his property. Whilst, however, the law thus completely and effectually takes away from the defendant all power and control over the property levied upon, it is not unmindful of his rights and interests. If the property taken is sufficient to satisfy the execution, the defendant is fully released from all other claims of the plaintiff upon him; the judgment is declared to be extinguished. *Ex parte Lawrence*, 4 Cowen, 417. *Jackson* v. *Merritt*, 7 id. 13. The sheriff, then being in possession of the goods, and liable to the judgment creditor to the amount of the execution if the value of the goods amount to so much, he at his peril must take care that the property is safely kept or secured, that it may be forthcoming at the day of sale. He may take the goods into his own exclusive possession, may leave them with the defendant in the execution, or if unwilling to trust him, may put them in the hands of another called a *receiptor*, to keep for him. I have never heard of an instance, where the sheriff has committed such a trust to an insolvent; he always selects a person abundantly able to respond to him the value of the goods. Such, I have no doubt, has been the uniform practice with sheriffs and constables in this state. In delivering the goods to the *receiptor*, he parts with the control over and

possession of them, until the day of sale, and if he has re-served the right, he may take them at any time before the sale. If the receptor does not produce them on the day of sale, he is responsible to the sheriff, to the full value of the goods. *Whittier* v. *Smith,* 11 Mass. R. 211. *Spencer* v. *Williams,* 2 Verm. R. 209. Responsible, as some of the cases say, only for gross negligence, upon the ground, that he is considered as the mere *servant, agent* or *naked bailee* of the sheriff. *Baker* v. *Miller,* 6 Johns. R. 195. *Brown* v. *Cook,* 9 id. 361. *Edson* v. *Weston,* 7 Cowen, 278. *Norton* v. *The People,* 8 id. 137. *Phillips* v. *Hall,* 8 Wendell, 614. He has also been considered as a *surety* for the de-fendant, that the property shall be produced at the sale, or that the money shall be paid, *Dillenback* v. *Jerome,* 7 Cow-en, 300 ; and, in that character, is the receptor considered by Mr. Justice Nelson, in the . opinion by him delivered in the case at bar. If surety, then he is responsible at all events, for all casualties that may happen to the property ; while a mere servant or naked bailee is answerable only for gross neglect. In Massachusetts, he has been consid-ered as a *mere servant. Ludden* v. *Leavitt,* 9 Mass. R. 104. *Bond* v. *Padelford,* 13 id. 394, and yet, has he been per-mitted, in the courts of that state, to maintain *trespass* or *trover* for the goods taken from him. *Waterman* v. *Robinson,* 5 Mass. R. 303. *Eton* v. *Lynde,* 15 id. 242, while the universal doctrine has always been, that the servent or agent could not sue ; the right of action being with the master or principal, and no one else. The decisions, in our own courts, seem to be as much in conflict with each other, as are those in the courts of Massachusetts.

It cannot be denied, that a receiptor may sometimes be regarded as a mere servant, without any right of action ; as where the sheriff levies on a flock of sheep, and applies to a farmer to keep them, and the farmer agrees to keep them, without any positive obligation or promise that he will re-deliver them on any particular day ; here the farmer is as the mere servant or naked bailee of the sheriff, and is re-sponsible only for fraud or gross neglect which is evidence of fraud. But if the farmer gives a receipt, therein promis-

ing to produce the sheep on a given day, he then loses his character of servant or naked bailee, becomes responsible for the delivery of the sheep, and assumes thereby upon himself all casualities which may occur ; he is answera ble for any negligence. *Harris* v. *Smith*, 3 Serg. & Rawle, 20. *Poole* v. *Symonds*, 1 New Hamp. R. 292–3. " It is,' as Ch. Justice Holt said in the case of *Coggs* v. *Bernard*, 2 Ld. Raym. 918, " an obligation which arises, *ex mandato* It is what we call in English, an acting by commission ; and if a man acts by commission for another *gratis*, and in executing the commission behaves himself negligently, he is answerable." " The reasons are," continues the judge, in page 919, " first, because in such a case, a neglect is a de-- ceit to the bailor. For when he entrusts the bailee upon his undertaking, he has put a fraud upon him by being negligent, his pretence of care being the persuasion that induced the plaintiff to trust him ; and a breach of trust undertaken voluntarily will be a good ground for an action." 1 Rol. Abr. 10, 2 Hen. 7, 11, a strong case to this matter. There the case was an action against a man who had undertaken to keep an hundred sheep, for letting them be drowned by his default ; and then the reason of the judgment is given, because when the party has taken upon him to keep the sheep, and afterwards suffers them to perish in his default ; inasmuch as he has taken them and executed his bargain, and has them in his custody, if after, he does not look to them, an action lies. For here is his own act, to wit, his *agreement and promise*, and that after being broke on his side, shall give a sufficient cause of action. But secondly it is objected, that there is no consideration to ground this promise upon, and therefore, the undertaking is but *nudum pactum*. But to this, I answer, that the owners, trusting him with the goods, is a sufficient consideration to oblige him to a *careful* management. Again, in page 920, there has been a question made : If I deliver goods to A., and, in consideration thereof, he *promises* to re-deliver them, if an action will lie for not re-delivering them ; and in Yelv. 4, judgment was given, that an action will lie. But that

judgment was afterwards reversed, and according to that reversal, there was judgment afterwards entered for the defendant in the like case. Yelv. 128. But those cases were grumbled at, and the reversal of that judgment, in Yelv. 4, was said by the judges to be a bad resolution; and the contrary to that reversal was afterwards most solemnly adjudged, in 2 Cro. 667, in the King's bench, and that judgment affirmed upon a writ of error."

Jones, in his treatise on Bailments, 54, says, " It is almost needless to add, that a mandatary as well as a depositary, may bind himself by special agreement to be answerable even for casualities." Judge Story, in his excellent treatise on Bailments, page 22, says, if a depositary should specially contract to keep *safely*, he might be liable for ordinary negligence, although the law would otherwise hold him liable only for gross negligence. Upon this ground, *Southcote's case*, 4 Co. R. 83, *b.* 1. Inst. 89. *a, b,* may perhaps be maintained to be good law; and is not liable to the objection made against it in *Coggs* v. *Bernard*. If, indeed, it proceeded upon the ground asserted by Lord Coke, that a bailment upon a contract *to keep* and *to keep safely* is the same thing, it is certainly not law, and was overruled in *Coggs* v. *Bernard*. But from the report it would seem, that the bailment was there *to keep safe ;* and if so, then upon the special contract the party might have been held responsible, although he could not otherwise be so held by the general law. This was the doctrine maintained by all the judges in the case of *Coggs* v. *Bernard*, which case proceeded mainly upon that ground; and in a later case, *Kettle* v. *Brumsdale*, Willes' R. 118, 121, the same distinction was adopted by the court; and it was held, that if a depositary should accept to *keep safely*, he would be responsible for losses by robbery or theft, although not otherwise responsible upon the general principles of law. And again, in page 48, he refers to the saying of Lord Coke, " for if goods are delivered to one to be *kept* and to be *safely kept*, it is all one in law." Hence he concludes that if goods are delivered to a man to be *safely kept*, and afterwards those goods are stolen, this shall not excuse him, be-

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

c ause by the acceptance he undertook to keep them safely, and, therefore, he must keep them at his own peril. But if goods are delivered to him *to keep as he would keep his own*, then, if they are stolen from him without his default or negligence, he shall be discharged. Co. Litt. 89, *b*. And he recommends on this account to those who receive goods, that they should receive them in a special manner, viz. to be kept as their own, or at the peril of the owner. An agreement, such as is made in the case at bar, being a positive unqualified promise to deliver the horses by a certain day, includes the obligation to *safely keep them*, for if the receiptor does not, he cannot deliver, and makes him answerable even for casualties. In *Booth* v. *Wilson*, 1 Barn. & Ald. 59, it was held, that a gratuitous bailee might maintain case against his neighbor, who suffered his fence to be so much out of repair, that the bailor's horse in a dark night fell from the bailee's field into the other, and was killed: the full value of the horse was recovered. This recovery was based upon the consideration, that the gratuitous bailee was responsible to the bailor for a redelivery of the horse. It is the fact of responsibility, which decides the right to the action of *replevin*. See *Harrison* v. *McIntosh*, 1 Johns. R. 385. Mr. Justice Fincux, in the Year Books, 21 Hen. 7, 14, pl. 23, said, (and it was an action of *replevin* brought by a bailee, for aught that appears upon a general bailment,) "In this case, the bailee has a property in the thing against a stranger, for he is chargeable to the bailor ; and for this reason he shall recover against a stranger who takes the goods out of his possession." The power and control which the sheriff had over the chattels, he has imparted to the receiptor, who is substituted in his place, as far as the possession and control of them are concerned, until the day of sale. They are, while in the receiptor's possession, as much in the custody of the law, as they were when in the sheriff's possession ; and I can see no reason why the receiptor should not have the protection of the law, and be authorized to maintain *replevin*, so that he may be enabled to discharge his responsibilities to the sheriff, as well as that the sheriff should have such protection and action, to en-

able him to discharge his responsibilities to the judgment creditor.

It has been held, that *replevin* cannot be maintained by a receiptor, *Perley* v. *Foster*, 9 Mass. R. 114, upon the ground, that no one can maintain that action but he who has *property* in the goods, general or special, and *possession*, actual or constructive ; *Thompson* v. *Button*, 14 Johns. R. 84 ; *Dunham* v *Wyckoff*, 3 Wendell, 281 ; and consequently, as is urged, the receiptor, not having either, cannot maintain the action. It is settled law, that a receiptor can maintain *trespass* against any person, who tortiously or unlawfully takes away from him the chattels in his possession. *Burrows* v. *Stoddard,* 3 Conn. R. 160. It was conceded by the counsel in the case of *Collins* v. *Butts*, and expressly admitted and stated by the chancellor, upon authority, 13 Wendell, 143, that, in an action of *trespass*, a bare possession is sufficient to enable the plaintiff to recover against a wrong doer, who takes the property out of his possession without authority. Spencer J., in *Hoyt* v. *Gelston*, 13 Johns. R. 151, said, " It is a general and undeniable principle, that possession is a sufficient title to the plaintiff in an action of *trespass vi et armis*, against a wrong doer." 1 East, 244. 3 Burr. 1563. Willes' R. 221. Esp. Dig. 403. " The finder of an article," adds the judge, " may maintain trespass against any person but the real owner, and a person having an illegal possession may support this action against any person, other than the true owner," citing 1 Ch. Pl. 168 ; 2 Saund. 47, *d.* If a receiptor can maintain *trespass*, then can he maintain *replevin*. Ch. Justice Savage, in *Chapman* v. *Andrews*, 3 Wendell, 242, says, " The doctrine of this court I consider as settled, that *replevin* lies for such a taking as will sustain an action of *trespass de bonis asportatis*." In that case, he adds, " there was no *tortious* taking, which is necessary to maintain *trespass* or *replevin*." See to the same point, *Bruen* v. *Ogden*, 6 Halst. Rep. 370. And again, in *Dunham* v. *Wyckoff*, 3 Wendell, 281, it was held, that if the plaintiff has the right to take possession of the chattel at pleasure, he can maintain *trespass*, and that *replevin* and *trespass* in such cases were concurrent remedies. See also

*Thompson* v. *Button*, 14 Johns. R. 86. That the receiptor had the right to take these horses whenever he pleased, is clearly established by the testimony ; but independent of such testimony, it has been expressly adjudged, that a receiptor may lawfully take the chattel from the possession of the defendant. *Bond* v. *Padelford*, 13 Mass. R. 394. The receiptor may not only maintain *trespass,* but he may also maintain *trover.* It was formerly held, that no one could maintain *trover* unless he had both the right of possession and right of property. *Gordon* v. *Harper*, 7 T. R. 12. 13 ; but it is now held otherwise. Any person may maintain *trover*, from whose possession the chattel has been taken, or who had the last possession. *Duncan* v. *Spear*, 11 Wendell, 54. *Daniels* v. *Ball* & *Brown*, id. 57, in notis. As then the receiptor, in the case at bar, was bound to deliver the horses to the officer by the time specified in his receipt he could not justify his omission in doing so, because a stranger had committed a trespass upon him in taking them away. It would be great injustice to withhold from the receiptor, or to deny to him the power of the law, to regain the possession of the goods tortiously taken from him, and yet hold him responsible to the officer from whom he received them. " It would," as remarked by Chief Justice Richardson, in *Poole* v. *Symonds*, 1 New Hamp. R. 294, " be repugnant to every principle of justice, to hold him responsible as a bailee, while we allow him only the rights of a mere servant. But a mere servant is not responsible for goods forcibly taken from him ; and if Poole (the receiptor) is to be considered as employed in that character, it would seem to be a good defence to any action, Huntington (the sheriff) may bring against him, that the mare was taken by force from him, by the debtor or any other person without his fault. But this would undoubtedly be contrary to the understanding of the parties, and might defeat the very object of the contract." In an action of *trespass* or *trover*, the receiptor recovers the full value of the goods and chattels taken, with interest or with smart money as the case may be. What reason can be given, why he should not recover the goods themselves, if he may recover

their value? Of what avail would the recovery of the value of the property be against a man utterly insolvent, of whom not a farthing can be collected on execution? And even if the trespasser be a man of substance, of whom, at the end of the prosecution the value of the goods could be collected, there is no reason nor propriety in delaying the plaintiff in the execution in virtue of which the property was levied upon, until such a suit can be brought to a close, before he shall receive the fruits of his judgment. The officer, it is true, may sue the receiptor, but the same delay will follow. The judgment creditor may sue the sheriff or proceed against him by attachment; but all this is productive of vexation and delay. The *officer*, it is said, may maintain *replevin* against the trespasser; this is also true, for the unlawful taking is an injury to both the receiptor and the officer, and either may maintain the action, and he who first sues has the prior right. *Flewellin* v. *Reeve*, 1 Bulst. 69. Ham. on Par. to Actions, 39. 40 and 180. 2 Black. Com. 396. *Poole* v. *Symonds*, 1 New Hamp. R. 294. Story on Bailment, 74, § 94, and 81, § 105. Yet he may decline the trouble and vexation of a lawsuit against an insolvent trespasser, subjecting himself to the costs, even if he succeeds of his own attorney and counsel. Being satisfied with the responsibility of his receiptor, he chooses to look to him alone, as he has a perfect right to do. All which trouble, delay, vexation and expense is completely obviated, by the receiptor's action, of *replevin;* the goods are immediately put in his possession; he delivers them to the officer; they are ready at the day of sale, are sold, the judgment creditor receives the amount of his demand, and the sheriff and the receiptor are absolved from all responsibility.

If the person who has taken the goods has a paramount title, that, is a good defence in *trespass*, or if he claims under one having a paramount title, he can in trespass plead that matter in full and perfect defence. *Demick* v. *Chapman*, 11 Johns. R. 132. *Cook* v. *Howard*, 13 Johns. R. 284. So in an action of *trover*, the same defence can be succesfully interposed. *Kennedy* v. *Strong*, 14 Johns. R. 131, 2.

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

*Rotan* v. *Fletcher*, 15 Johns. R. 207; and so in *replevin.* The real owner, or he who claims under him is not in any manner prejudiced in his rights, or embarrassed in his defence, whether the action be trespass, trover or replevin. Plain reason and sound sense, as well as the authorities cited, give to the receiptor the action of replevin. Many other cases might be cited in support of this proposition; I will however mention but a few. The rule laid down by Mr. Justice Van Ness in *Pangburn* v. *Patridge*, 7 Johns. R. 143, is the sound and sensible rule on the subject. He says, " This action is usually brought to try the legality of a distress; but it will lay for any unlawful taking of a chattel. Possession by the plaintiff, and an actual wrongful taking by the defendant *are the only points* requisite to support the action; and none of the cases defining the nature of the action, confine it specially to the case of a chattel taken under pretence of a distress. The old authorities are, that replevin lies for goods taken *tortiously* or by a *trespasser*, and that the party injured may have replevin or trespass, at his election." The judge cites a number of cases in support of his position, and then adds, " similar language is held in many of the modern authorities cited by the plaintiffs' counsel upon the argument, and particularly by Baron Gilbert, Baron Comyns, and Lord Redesdale. If this question be considered upon principle, it is proper this action should be maintainable wherever there is a *tortious* taking of a chattel out of the possession of another." If this case is considered as law, it puts an end to the case at bar. The same principles have been recognized and reiterated, by Justice Platt and Chief Justice Spencer in *Mills* v. *Martin*, 19 Johns. R. 31, 2; again by Justice Platt, in *Clark* v. *Skinner*, 20 Johns. R. 468; and again by Chief Justice Savage, in *Marshall* v. *Davis*, 1 Wendell, 111.

It was objected on the argument, that the horses being taken from Jacob Coon's possession, they were not taken *from the possession of the receiptor*, and so the receiptor could not maintain replevin. The evidence is, that Coon kept the horses for the receiptor, who had a right to take them away when he pleased. They were constructively

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

in the possession of the receiptor, and such constructive pos-
session is sufficient to maintain trespass or replevin. *Burrows*
v. *Stoddard*, 3 Conn. Rep. 160. *Clark* v. *Skinner*, 20 Johns.
R. 469. Notwithstanding the horses were in the possession
of Coon, they were still in the custody of the law. *Hartwell*
v. *Bissel*, 17 Johns. R. 128; they were in the legal posses-
sion of the receiptor. There is no such absurdity in the law,
as permitting property *in* the custody of the law, to be taken
*from* the custody of the law, to be put into the custody of the
law. The horses were wrongfully taken by the defendant;
they were tortiously taken, for he was informed before he
took them that they belonged to the plaintiff; that Solyman
Coon had levied on them, and delivered them to plaintiff, who
had receipted them to S. Coon, and requested J. Coon to
keep them.

One word as to the plain justice of this case, and the
rights of the parties who are really interested therein. The
suit is in form, *Miller* v. *Adsit*, but in substance *Eliza Coon*
v. *Edwin R. Ball*. E. Coon obtained a judgment, on the
9th May, 1828, against Jacob Coon, for $201,12, and on
the same day execution was issued thereon, a levy made
by S. Coon the constable on the horses in question, and
they were advertised to be sold; and on the 13th May,
Miller receipted the property. Seven days after E. Coon
had obtained her judgment, and the execution was issued and
levy made, and after the giving of the receipt, to wit, on
the 16th May, 1828, E. R. Ball obtains a judgment against
the same defendant for $51.17, on which judgment execu-
tion was issued on the 31st of the same month of May, and
delivered to Adsit, who is the defendant in this suit, and
who, on the 3d June thereafter, levied on the same horses.
That E. Coon is entitled to a prior right of satisfaction out
of this property is not and cannot be questioned. It is not
urged or pretended, that her judgment is not for an honest
debt, nor but that the levy by S. Coon was bona fide, for
the purpose of securing that debt, and not to protect the
property of the debtor from his other creditors; nor can it
be alleged that her execution has become dormant in the
officer s hands. We are therefore bound to consider the

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

whole a fair, honest, bona fide transaction, and her execution a valid and effective execution. The effect of the judgment of the supreme court is to take away from her, her conceded prior right to satisfaction, and giving it to the junior execution. To this I cannot assent.

The learned judge who delivered the opinion of the supreme court in this case says, " the defendant (the 2d constable) might no doubt have taken judgment *retorno habendo* and repossessed himself of the property on the execution." This, to my mind, is not quite so clear. The property in the hands of the receiptor is in the custody of the law, or as some of the cases say, in the constructive possession of the 1st constable. Who has the better right to the property, the first or second constable? Can there be a doubt on this subject? The horses being in the legal possession of the first constable, or of his receiptor, the second constable had no right or authority to meddle with the property. What pretence of claim can he have to demand the judgment of the court that the horses should be taken from the first constable or his receiptor, and be delivered to him? I do not understand by what rule of law it is, that the junior execution in this case has a right to demand and take property under levy upon the older execution; or how it is that the second constable has superior rights to the first constable, to the horses which the first constable had first levied upon. The learned judge proceeds, " In that case, (i. e. in case of a judgment *de retorno habendo*,) he (the second constable,) must have sold it on his execution, and all beyond paying that debt and costs, (amount of second execution,) must have been returned to the defendant in the execution, or paid over to the other officer, (the first constable.) I cannot readily perceive from whence this power is derived, for certainly I know not any principle of law which authorizes the second constable to sell property under levy upon an older execution by the first constable; there being no pretence that the older execution is dormant, or that the first constable has lost his lien on the property; much more difficult is it for me to understand by what au-

ALBANY,
Dec. 1836.

Miller
v.
Adsit.

thority the second constable will be justified in paying over to the first constable the excess, after satisfying the second execution, when the mandate in the writ, and an express positive statute direct, that the excess shall be paid to the defendant in the execution, Laws of 1824, p. 287, § 14, 16, in all cases where property has been rightfully sold under execution. The judge further remarks, " It is clear, if the constable holding the other execution (meaning the first) had brought the. replevin, the measure of damages against him would have been the amount of the execution and costs in the hands of the defendant, (the second constable,) *because at most it would only have a preference,* and any thing beyond that amount would belong to the other officer (the first constable.) When, how, and in what manner the second execution had a preference over the first, the case does not state ; and I cannot assume the fact, that the second execution has a preference, so long as the law is, that the oldest execution first levied has the preference. The first execution must be first satisfied, and after that, what may be left equitably belongs to the second execution. If the first execution is levied on only one article, which produces more than enough to satisfy the first execution, the second constable has no claim at law upon the excess ; it must by statute be paid to the defendant in the execution ; but if the first levy be on a number of articles and a sale of a part of them satisfy the first execution the residue of the articles may be made liable by a levy, to satisfy the second execution. But how has the first execution lost its preference, so that it is entitled only to the excess, after satisfying the second execution ? How is that officer to get it ? By suit ? If the second constable pleads payment of it to the defendant in the execution, pursuant to the statute, that is a perfect defence to the suit. But further, (the opinion proceeds,) " I consider the present plaintiff (the receiptor)˙in as good a situation as the constable, so far as the amount of the recovery is concerned. He stands as the receiptor or surety to him of the property, and as such is responsible for it. It would therefore be idle to draw the money out of his hands, for the sake of paying

ALBANY.
Dec. 1836.

Miller
v.
Adsit.

it over to the officer." I presume this suggestion is made upon the assumption that the second constable could have claimed of the receiptor the value of the whole property replevied ; the second constable, in fact, by direction of the judge in the court below, recovered a verdict to the value of the whole property, with rising two and a half years' interest, amounting in all to $118,00; but he remitted all damages, beyond the amount of his execution and interest, and fees. It would indeed have been an idle operation, for the second constable to have collected the whole amount of the verdict, merely for the purpose of paying the excess over to the first constable, even if he had a right by law to make such payment. Now, this suggested mode of proceeding must have arisen from a belief that all the property levied upon, was sufficient to satisfy both executions ; for the judge adds, " If he (i. e. the first constable) gets the money on the execution, it is all that concerns him ;" when the fact is directly the contrary ; the oldest execution being for $201,12, and the whole value of the property taken is proved to be worth only $100. The whole of this property belongs to the first execution ; but by the judgment of the court, the second execution must be first satisfied, and the second constable has taken his judgment for $51,17, with interest from 28th May, 1828, together with his fees; and had he collected the whole verdict, the balance only, according to the opinion of the supreme court, would have been to be paid over to the first constable. This payment the second constable could not according to law make, and consequently the first execution entitled to the whole would receive nothing, and the second execution entitled to nothing would be fully paid, and the balance paid to the defendant in the execution. Money it is true may be levied upon, but the highest tribunal in our land, approved by the supreme court of this state, has decided that the money, the excess in the constable's hands is not the defendant's, and cannot be levied upon as his, until it is paid over to the defendant in the execution. *Turner* v. *Fendall,* 1 Cranch R. 117. *Dubois* v. *Dubois,* 6 Cowen, 484.

I cannot, by my vote, sanction such manifest wrong and palpable injustice as will be done if this judgment is suffered to stand. No executive officer, or any other person who acts under or in aid of such officer, should be injured or subjected to hazard or loss for any act done in the legitimate performance of duty. The plaintiff in the court below was improperly nonsuited, and the assessment of the value of the property in favor of the defendant, pursuant to the directions of the judge, is against law. The judgment of the supreme court, affirming those proceedings should therefore be reversed.

By Senator MACK. The question in this case is whether the plaintiff, as *receiptor* of the property had, or had not, such an interest in it as would entitle him to maintain an action of *replevin* against a party who took the property after he had become liable for its delivery.

The reported cases furnish but one decision in the courts of this state, which has a bearing upon the present case, viz. that of *Dillenback* v. *Jerome*, 7 Cowen, 294, which has been rendered familiar to the members of this court during the discussion of this case. This decision, had, before the adoption of the revised statutes, was not based upon the law as acknowledged to exist in this state, but relies for its support principally upon the decision in the courts of Massachusetts, where it is held that a *receiptor* is but the naked bailee or servant of the officer ; and of course, if a just analogy prevails in their laws and practice, is responsible only for due care and diligence in the safe keeping of the property submitted to his care.

But, in the case of *Dillenback* v. *Jerome*, the learned chief justice observes ; " The officer who levies upon goods may also maintain an action against any person who becomes responsible for the safe keeping and delivery of them on demand, or at a specific time and place." Such is indeed the principle established in this state, so clearly, I believe, that I shall not be required to support it by authorities. An officer may not only maintain an action against a receiptor, but when the undertaking is such as in the pre-

sent case, it will be no defence for the receiptor that he has used due care and diligence in the safe keeping of the property, and that it has been taken or withheld from his possession violently, fraudulently or illegally. While a receiptor is thus held responsible, it would (and I speak it with great deference to the opinions of those learned judges who hold otherwise) be the refinement of technicality to deny him that degree of interest in the property which will entitle him to the protection of the law against any wrong doer by whose acts he is prevented from fulfilling his legal undertaking. Would it not indeed be gross injustice to hold him strictly responsible on the one hand, and on the other to deny him the means of protection or remedy? The imperious mandate of the law, and not the vague authority of precedent, can alone justify the establishment or sanction of a principle so much at variance with what I conceive to be the rule of justice and sound public policy.

We are told in one of the Massachusetts cases, 14 Mass. R. 217, that "there is no *third* species of property;" and in *Dillenback* v. *Jerome*, 7 Cowen, 297, that " property is either absolute or special." But may not more than one person have a special property in the same thing, and may not such several persons have different qualities and degrees of interest? The officer, as the agent of the law, directly responsible to the party in whose behalf his official powers are put in requisition, has a special property in that upon which he has rightfully levied, which entitles him to reclaim it when wrongfully taken from his own possession, or that of the defendant, with whom he may leave it ; and the receiptor is so far the servant or bailee of the officer as to preserve to the direct agent of the law, that degree of special interest which will enable him to recover the property when wrongfully taken from the possession, actual or constructive, of his receiptor, and the latter shall neglect or refuse, or be incompetent, to procure its restoration. If the officer thus asserts and enforces his right against the aggressor, he has made his election of remedies, and the receiptor is released from his responsibility. If

the receptor is held to his original responsibility, he has a special interest in the property, wherever it may be found, to the extent of his legal liability. These several degrees of interest cannot in any case be inconsistent with each other ; but in my opinion it harmonizes with justice and sound policy that they should exist together and be legally recognized and enforced. Indeed, the principle is acknowledged in this very case, in the opinion delivered in the supreme court. "It is clear," says the learned judge, "that the officer is not bound upon the levy to take the property into his actual custody or possession, and that he may leave it with the defendant, or any other person upon such terms as he chooses to make, being himself responsible to the plaintiff for its application upon the execution. If it consists of live stock, he may hire an agister to keep it ; if merchandise, a warehouseman ; if unfinished manufactured articles, he may contract with a manufacturer to finish them ; and these various persons will hold the same relation to him which they would in their different occupations to any other customer. And if so, there cannot be a doubt, that if an injury is done to the property by a wrong-doer, while thus in their possession, upon well settled and familiar principles they could maintain an action upon the strength of their special property." Now, if an " agister," a " warehouseman," or a " manufacturer," the mere servants or agents in whose care articles are left by an officer, may maintain an action for *injury* done to the property while in their possession, " upon the strength of their special property," may not a *receptor*, whose responsibility is higher and less equivocal, maintain an action by virtue of *his* special property, for goods which he has receipted, and which have been taken or are withheld by a wrong-doer from his possession ? And if so, may he not seek and obtain his remedy by an action of replevin.

I have briefly adverted to the adverse decisions, and have advanced those principles which I think ought to govern the case. I will now recur to the revised statutes, which cast some light upon the question, if they do not clearly decide it in the affirmative of my positions. " When-

ever any goods or chattels shall have been wrongfully dis-
trained or otherwise wrongfully taken, or shall be wrong-
fully detained, an action of replevin may be brought for
the recovery thereof, and for the recovery of the damages
sustained by reason of such unjust caption or detention ex-
cept in the cases hereinafter specified.  2 R. S. 522, § 1.
No replevin shall lie at the suit of the defendant in any
execution or attachment to recover goods or chattels seized
by virtue thereof, unless such goods or chattels were ex-
empted by law from such execution or attachment; nor
shall a replevin lie for such goods or chattels at the suit of
any other person, *unless he shall,* at the time, *have a right
to reduce into his possession* the goods taken. Id. § 5.  The
reservation in this section, authorizes " any other person"
than the defendant, who has " a right to reduce into his pos-
session the goods taken," to replevy goods and chattels
which have been seized by virtue of any execution or at-
tachment.  So, again, by § 7, " an affidavit must be made
by the plaintiff in the action, or some one in his behalf,
stating that the plaintiff in the action is the owner of the
property described, *or* that *he is then lawfully entitled to
the possession thereof,*" &c.  If, therefore, the statute fur-
nishes a guide and authority in the present case, it is not
essential to determine whether the property was in the *ac-
tual possession* of the plaintiff at the time of the taking up-
on which the supreme court appears to have placed much
stress.  " I cannot," says the judge, " distinguish this case
from that of *Dillenback* v. *Jerome,*" in which he says, " it
was settled that a receiptor to the officer for property le-
vied upon by execution, that it might be forthcoming at the
sale, *not in his actual possession,* could not maintain *trover*
for a wrongful conversion of the same :" " the property was
not delivered to the receiptor in fact, but left with the de-
fendant in the execution."  But was the property " wrong-
fully taken ?" and had the plaintiff at the time " the right
to reduce it into his possession ;" or was he " then lawfully
entitled to the possession thereof ?"  At the time the defend-
ant took the property in question, he found it in the hands
of the defendant in the execution, where the officer, at

least, who made the previous levy had a right to leave it. He was informed that the prior levy had been made, and that the plaintiff had receipted the property to the constable. This officer had the prior lien, of which he could not be legally deprived during the life, or until the satisfaction of the first execution. The property, therefore, was " wrongfully taken" by the defendant, independent of what may have been the right of the receiptor. But the receiptor stood for the time being in the place of the officer, with the same right to leave the property in the care of the defendant in the execution or any other person, and the same right " to reduce it into his possession." He had by his receipt, in the nature of an original undertaking, for a consideration acknowledged to have been received, namely, the property in question, obligated himself to re-deliver the property to the constable on a day specified, or in default thereof to pay the debt and costs of the execution. The property must therefore, in construction of law, have been delivered to and in the possession of the receiptor, or his undertaking for the want of consideration, was void. Such is the testimony of the case. The witness *Jacob Coon* testified, that at the time of the second levy, "*witness was keeping the horses for the plaintiff, as he imformed the defendant at the time;* that, at the time of the first levy, the plaintiff" (who lived adjoining witness) " receipted them to said constable, and requested witness to take them and keep them, and use them enough to pay for pasturing, as he, plaintiff, had no pasture for them ;" that " plaintiff had a right to take them from witness whenever he pleased ;" and that he (the witness) " told the defendant at the time he took the horses that they belonged to the plaintiff; that Solyman Coon, the aforesaid constable, had levied on them and *delivered them to the plaintiff* who had receipted them to Solyman Coon, and *requested* witness to keep them." Had not then the receiptor, I repeat, under these circumstances, and in view of his legal responsibility to the officer, the constructive possession of the property, and at that time, and at all times " the right to reduce it into his actual possession ?" If so, that right vested and continued in him

during the existence of his liability; he could not be divest-
ed of it by the act of any trespasser or wrong-doer; and
by the reservation to the exception in § 5 of the statute, he
could enforce that right against a seizure under an execu-
tion *by an action of replevin.* The statute, therefore, comes
in aid of reason, and favors the present opportunity for this
court to establish a principle which is consistent with the
fundamental rules of justice, that there shall be no wrong
without a remedy—that where the law imposes an obliga-
tion, it will also extend its protection. With this view of the
case, I must vote for reversing the judgment of the supreme
court.

On the question being put, *Shall this judgment be reversed?*
the members of the court voted as follows:

*In the affirmative*—The PRESIDENT of the Senate, and
*Senators* ARMSTRONG, J. BEARDSLEY, BECKWITH, DOWNING,
FOX, GRIFFIN, J. P. JONES, LACEY, LAWYER, LOOMIS,
LOUNSBERRY, MACK, MAISON, POWERS, SPARKER—16.

*In the negative*—The CHANCELLOR, and *Senators* HUN-
TER, GANSEVOORT, TRACY, WAGER, WILLES—6.

Whereupon the judgment of the supreme court was RE-
VERSED, and a *venire de novo* awarded.